```
                    IN THE UNITED STATES DISTRICT COURT
                     FOR THE SOUTHERN DISTRICT OF OHIO
                              EASTERN DIVISION
```

Jeremy Garrett,                    :
      Plaintiff,               :     Case No. 2:08-cv-452
  v.                               :     Judge Graham
Belmont County Sheriff Dept.       :     Magistrate Judge Kemp
& Belmont County Jail,             :
      Defendants.              :

                        REPORT AND RECOMMENDATION

     This matter is before the Court for an initial screening pursuant to 28 U.S.C. §1915. For the following reasons, the Court recommends that the complaint be dismissed for failure to state a claim upon which relief can be granted.

                                   I.

  28 U.S.C. §1915(e)(2) provides that in proceedings in forma pauperis, "[t]he court shall dismiss the case if ... (B) the action ... is frivolous or malicious [or] fails to state a claim on which relief can be granted...."  28 U.S.C. §1915A further provides that in any prisoner case, the Court shall dismiss the complaint or any portion of it if, upon an initial screening, it appears that the complaint fails to state a claim upon which relief can be granted or seeks monetary damages from a defendant who is immune from suit. The purpose of these statutory sections is to prevent suits which are a waste of judicial resources and which a paying litigant would not initiate because of the costs involved.  See Neitzke v. Williams, 490 U.S. 319 (1989).  A complaint may be dismissed as frivolous only when the plaintiff fails to present a claim with an arguable or rational basis in law or fact.  See id. at 325.  Claims which lack such a basis include those for which the defendants are clearly entitled to immunity and claims of infringement of a legal interest which

does not exist, see id. at 327-28, and "claims describing fantastic or delusional scenarios, claims with which federal district judges are all too familiar." Id. at 328; see also Denton v. Hernandez, 504 U.S. 25 (1992).  A complaint may be dismissed for failure to state a claim upon which relief can be granted if "it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Claims against defendants who are immune from suits for money damages, such as judges or prosecutors acting in their judicial or prosecutorial capacity, are also within the ambit of §1915A. Pro se complaints are to be construed liberally in favor of the pro se party.  See Haines v. Kerner, 404 U.S. 519 (1972).   It is with these standards in mind that the plaintiff's complaint and application for leave to proceed in forma pauperis will be considered.

II.

Plaintiff, Jeremy Garrett, filed a pro se complaint against the Belmont County Sheriff Department and the Belmont County Jail (collectively "Belmont"). The facts set out below are taken entirely from that complaint.

Mr. Garrett was incarcerated at the Belmont County Jail in St. Clairsville, Ohio during the relevant time period. Garrett was married and the father of six children. Between February 6 and February 28, 2006, while incarcerated, Mr. Garrett received "numerous letters and statements from [his] wife indicating that she was going to commit suicide." (Compl. at ¶1). He repeatedly asked the officers at the jail for "immediate intervention or investigation into the matter" but the "defendants ignored and mocked" his requests. Id. Unfortunately, Mr. Garrett's concern was well-founded and sometime, presumably on or shortly after February 28, 2006, Mrs. Garrett committed suicide.

Mr. Garrett claims that his wife's suicide could have been prevented by a "simple visit from one of the officers". (Compl. at p. 2 Conclusion). He and their six children now suffer "severe trauma and loss". (Compl. at ¶3). Mr. Garrett himself suffers "extreme depression and mental anguish". (Compl. at ¶4). Mr. Garrett further contends that the "police department and jail caused the death of [Mrs. Garrett] because they refused" to respond to his repeated requests for help. (Compl. p. 2 Conclusion).

Plaintiff seeks $25 million for himself and his family's suffering, $5 million in punitive damages, burial costs and related final expenses, counseling costs for himself and his children incurred as a result of the suicide, attorney's fees and court costs, a "full investigation into the breach of duties" with "appropriate criminal action", and a restraining order against the defendants. Id.

III.

Federal courts are courts of limited jurisdiction. Under Article III of the United States Constitution and 28 U.S.C. § 1332(a), federal courts may hear cases based on state law causes of action only if the parties to the case reside in different states. Here, the complaint sets forth only Ohio addresses for all three parties. Since all parties reside in the same state, this federal court has no original jurisdiction over any state law claim that may arise under these facts. However, under Article III of the United States Constitution and 28 U.S.C. §1331, federal courts have original jurisdiction when questions arise under the United States Constitution or federal law. This court, therefore, does have original jurisdiction to hear any Constitutional violations alleged in the complaint.

IV.

In the traditional sense of the word "cause," Belmont did not cause Mrs. Garrett to commit suicide. Its officers and employees did not threaten her or her family, nor did they have any unpleasant interaction with her that one would typically expect to lead to suicide. Taking the allegations of the complaint at face value, however, Belmont failed to act when Mr. Garrett informed Belmont employees of his wife's mental state and suspected imminent suicide. The Court must, therefore, determine whether this knowledge created a Constitutional duty for Belmont to act on behalf of Mrs. Garrett. For the reasons set out below, the Court concludes that no such Constitutional duty was created.

A. 8th Amendment: Cruel and Unusual Punishment.

The first Constitutional issue raised by the complaint is a possible violation of the Eighth Amendment right of a prisoner to be free from cruel and unusual punishment.  U.S. Const. amend. VIII.  To establish an Eighth Amendment violation for lack of medical attention, a prisoner must show that he or she has a serious medical condition and that the defendants displayed a deliberate indifference to his or her health.  Estelle v. Gamble, 429 U.S. 97 (1976); Wilson v. Seiter, 501 U.S. 294 (1991).  This formulation has both a subjective and an objective component. Objectively, the medical condition at issue must be "serious" as opposed to "trivial," "minor," or "insubstantial."  Subjectively, the defendants accused of violating the Eighth Amendment must have acted with a state of mind that can accurately described as "deliberate indifference."

The underlying rationale for Estelle is that prisoners, limited by their circumstances, must rely upon prison officials for medical care. If gross inattention is the only response to a serious medical problem, the prisoner has been treated cruelly and unusually and in violation of the Eighth Amendment.

Thus, to hold officials liable, they must be aware of facts from which they could conclude that a substantial risk exists and must actually draw that conclusion. <u>Farmer v. Brennan</u>, 511 U.S. 825, 839 (1994). Prison officials who know of a substantial risk to the health or safety of an inmate are free from liability if "they responded reasonably to the risk, even if the harm ultimately was not averted." <u>Id</u>. at 844.

The Supreme Court, in <u>Helling v. McKinney</u>, extended protection of prisoners to harms that will occur in the future, such as health problems created by exposure to second-hand tobacco smoke. <u>Helling v. McKinney</u>, 509 U.S. 25, 33 (1993). The Helling court held that exposure to tobacco smoke was a risk to inmate's future health and that the "Courts of Appeals have plainly recognized that a remedy for unsafe conditions need not await a tragic event". <u>Id</u>.

As shown above, the Eighth Amendment applies only to prisoners and those being punished. Mrs. Garrett was neither. While Mr. Garrett may believe that Belmont's failure to act on behalf of his wife was "repulsive and a moral shock to the community," there has been no extension of the Eighth Amendment to third persons or relatives of the prisoner. Mr. Garrett is not claiming that he had a serious medical condition left untreated by Belmont County Jail employees, nor that the conditions in the jail were inhumane or dangerous. His claim, rather, is that the Belmont County Jail employees' failure to help him protect his wife was a violation of his Eighth Amendment right to be free from cruel and unusual punishment. While it may seem cruel and unusual to Mr. Garrett that the jail employees did not help, their duty is only to the prisoners themselves. No constitutional duty of protection is extended to families, no matter how much anguish a prisoner will suffer due to the loss of a loved one on the outside. Even non-prisoners have no right to be protected

5

from violence of third persons, or from themselves. DeShaney v. Winnebago County Dpt. of Soc. Svs. 489 U.S. 189, 193 (1989). Even if Garrett were to construe his wife's imminent suicide as a future injury to his mental health that was certain to occur under Helling, this court can find no justification for such an attenuated cause to hold Belmont liable for her death. The Eighth Amendment simply does not stretch that far. The Court, therefore, need not discuss the subjective and objective components of an Eighth Amendment violation.

B. 14th Amendment: Deprivation of Life, Liberty, or Property Without Due Process of Law.

The second Constitutional issue raised by the complaint is a possible violation of the Fourteenth Amendment Due Process Clause. The Due Process Clauses of the Fifth and Fourteenth Amendments prevent the federal and state governments, respectively, from depriving "any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV, §1. While Estelle v. Gamble and the Eighth Amendment Cruel and Unusual Punishment clause, by their terms, apply only to persons who have been convicted of a crime, persons who are incarcerated while awaiting trial cannot be treated less favorably than persons who are in prison following conviction. Consequently, although they are not protected by the Eighth Amendment, the Fourteenth Amendment Due Process Clause protects pretrial detainees from treatment which can only be characterized as punishment. See Bell v. Wolfish, 441 U.S. 520 (1979). Consequently, if custodial personnel demonstrate deliberate indifference to the serious medical needs of a pretrial detainee, they have violated that detainee's Due Process Rights.

Beyond pretrial detainees, in general, the Fourteenth Amendment "does not require a state or local government entity to protect its citizens from 'private violence, or other mishaps not

6

attributable to the conduct of its employees.'" DeShaney v. Winnebago County Dept. of Soc. Svs., 489 U.S. 189, 193 (1989). Furthermore, the "Due Process Clauses [of the 5th and 14th Amendments] generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests." Id. at 196. Even where the government has agreed to act under certain circumstances, no Constitutional duty is created. Castle Rock v. Gonzales, 545 U.S. 748, 767 (2005). While the Due Process Clause is written as a limit on the State to prevent it from depriving individuals of life, liberty, or property, it does not confer any affirmative duty on the State to protect those interests. DeShaney, 489 U.S. at 195. In short, "a State's failure to protect an individual against private violence, simply does not constitute a violation of the Due Process Clause." Id. at 197.

In Castle Rock, a father killed his three daughters after he took them from their mother's yard, in violation of a restraining order against him. The children's mother repeatedly called to inform police that the children were missing and probably in their father's custody but the officers refused to search for the father or the children. Finally, after several hours, the father drove to the police station in his truck and was killed by officers after he fired at the station with a pistol. The three girls were found already murdered in the cab of the truck. The Supreme Court held that though the restraining order and its empowering statute contained language mandating arrest or issuance of a warrant if the father violated it, the police had no Constitutional duty to enforce the restraining order or to protect the mother or her children. Castle Rock, 545 U.S. at 768.

There are, however, two exceptions to this general rule that may confer an affirmative duty on the State. The first and most common is the creation of a special relationship between the

state and the plaintiff. The Sixth Circuit Court of Appeals has held that "absent a special relationship between the criminal and the victim or the victim and the state, no due process violation can occur." Janan v. Trammell, 785 F.2d 557, 560 (6th Cir. 1986). Usually, a "special relationship can only arise when the state restrains an individual." Sargi v. Kent City Bd. Of Educ., 70 F.3d 907 (6th Cir. 1995). (Emphasis in original).

Second, and far less common, a plaintiff may possibly recover under a state-created-danger theory. Under such a theory, liability is "predicated upon affirmative acts by the state which either create or increase the risk that an individual will be exposed to private acts of violence." Kallstrom v. City of Columbus, 136 F.3d 1055, 1066 (6th Cir. 1998). To recover, the state agency must create a special danger. That is, where the "state's actions place the victim specifically at risk, as distinguished from a risk that affects the public at large." Id. Therefore, under such a theory, the state must have both been aware of the dangers posed to the plaintiff, and played a part in the creation of those dangers. DeShaney, 489 U.S. at 201.

The facts of DeShaney are dispositive of both of the no-duty exceptions and are markedly similar to this case. In DeShaney, the Winnebago County Department of Social Services ("DSS") took Joshua, a young boy, into custody after suspected child abuse. However, after determining the evidence was insufficient to hold him, DSS returned Joshua to his abusive father's custody several days later. Over the next several months DSS tracked and logged a series of suspicious injuries, suspecting more child abuse, but took no further action. Finally, Joshua's father beat him so severely he was rendered permanently, profoundly retarded.

The Supreme Court of the United States held that though DSS had once taken Joshua into custody, and though they were aware of the danger posed to him, no special relationship existed, nor did

8

the State create or worsen the danger posed by the abusive father, and thus the State owed no duty to act on Joshua's behalf. DeShaney, 489 U.S. at 201. Like the case at bar, the Court went on to hold that the "most that can be said of the state functionaries in this case is that they stood by and did nothing when suspicious circumstances dictated a more active role for them." Id. at 203.

Like Joshua, Mrs. Garrett shared no special relationship with Belmont. She was not in Belmont's custody. She was not a prisoner or pretrial detainee. Though a relationship between Mr. Garrett and Belmont existed, it cannot be said to extend beyond the prison walls all the way to his family. As a prisoner, Mr. Garrett is unable to completely care for himself and Belmont therefore owes a duty not allow harm to come to him by deliberate indifference or intentional behavior of prison employees. However, though Mr. Garrett has a duty to protect his wife and children, the prison system does not assume that duty simply because an inmate can no longer perform it from captivity.

Belmont did not create a specific danger of suicide and had no control over Mrs. Garrett's mental state. Belmont did not place Mrs. Garrett in a dangerous situation. It did not release a person known to be dangerous to her from prison. Prior to his cries for help, it may not have even been aware that there was a Mrs. Garrett. Again, simply holding Mr. Garrett in custody does not create a specific risk of suicide on the part of Belmont. Unlike the situation in Castle Rock, where no Constitutional duty was imposed though police were mandated by law to act, here, there was no such statute or court order requiring Belmont employees to act. Without a special relationship between Belmont and Mrs. Garrett, or a specific danger created by Belmont, there is no legal ground to hold Belmont liable for the death of Mrs. Garrett.

V.

The Belmont County Jail and Belmont County Sheriff Department did not cause Mrs. Garrett to commit suicide. Under the Eighth and Fourteenth Amendments, it had no duty to act on her behalf. For these reasons, it is recommended that the federal Constitutional claims be dismissed for failure to state a claim upon which relief can be granted, and that the Court decline to exercise supplemental jurisdiction on any state law claims.

PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within ten (10) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver to the right to appeal the decision of the District Court adopting the Report and Recommendation. See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

/s/   Terence P. Kemp
United States Magistrate Judge

10