```
            UNITED STATES DISTRICT COURT
             SOUTHERN DISTRICT OF OHIO
                  EASTERN DIVISION
```

Jeremy Garrett,                       :
      Plaintiff,                   :   Case No. 2:08-cv-452
  v.                                  :   JUDGE GRAHAM
Belmont County Sheriff Dept.,         :
et al.,                               :
      Defendants.                  :

OPINION AND ORDER

    This matter is before the Court on the objection filed by the plaintiff, Jeremy Garrett, to the Magistrate Judge's Report and Recommendation. When objections are received to a Magistrate Judge's report and recommendation on a dispositive matter, the district judge "shall make a de novo determination of any portion of the magistrate judge's disposition to which specific written objection has been made . . . ." Fed.R.Civ.P. 72(b). After review, the district judge "may accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate judge with instructions." Id.; see also 28 U.S.C. §636(b)(2)(B). For the following reasons, this court will adopt the Magistrate Judge's Report and Recommendation and Mr. Garrett's claim will be dismissed for failure to state a claim upon which relief can be granted.

I.

    In his original pro se complaint Mr. Garrett claimed that, while incarcerated at the Belmont County Jail, he received several letters and statements from his wife telling him she intended to commit suicide. Mr. Garrett shared these letters and related statements to guards at the Belmont County Jail but to no avail. After approximately three weeks of these warnings, Mrs. Garrett committed suicide. She leaves behind Mr. Garrett and their six children. The Magistrate Judge determined that because

she was neither a pretrial detainee, prisoner, or involuntarily confined by Belmont, Belmont owed no duty to Mrs. Garrett. The Report and Recommendation stated that because Belmont had no special relationship with her, nor was there a state created danger to Mrs. Garrett, Belmont could not be held liable for Mrs. Garrett's suicide.

In his objection to the Report and Recommendation, Mr. Garrett supplemented his factual statement. Now aware that it is pertinent, he added the fact that Mrs. Garrett had, indeed, been in Belmont's custody prior to her suicide. He states that Mrs. Garrett was in Belmont's custody, though he does not say where or for what reason, and that she was on suicide watch. (Memo in Support of Objection at ¶4). Mrs. Garrett was subsequently released on bond and again attempted suicide, after which she was placed in a mental institution, apparently under Belmont's control. Id. The name of the institution is not given. Though "numerous" pleas and letters were sent to Belmont from the family and other officials to hold her, and though Mrs. Garrett herself informed Belmont officials that she intended to commit suicide upon release, Belmont released Mrs. Garrett. Id. Some time later, presumably not long after, Mrs. Garrett committed suicide in exactly the way she had stated she would to Belmont officials and family members. Id.

II.

Mr. Garrett, in his objection, correctly relies on Haines v. Kerner, 404 U.S. 519, 521 (1972), for the proposition that a pro se plaintiff's claims are construed more liberally than those written by practicing attorneys. He asks that this court "revisit" his claim in light of the information he omitted in his initial complaint. (Memo in Support of Objection at ¶9). Generally, the court need not allow additional facts to supplement a pro se complaint in an objection to a Magistrate's Report and Recommendation. In this case, however, the court will

revisit the issue.

If Mrs. Garrett was in Belmont's custody before her suicide, the two constitutional issues remain the same. That is, it is possible Belmont violated either the Eighth or Fourteenth Amendment. However, because Mrs. Garrett was no longer in custody at the time she committed suicide, the result remains the same.

A. Eighth Amendment Analysis

In the Report and Recommendation, the Magistrate Judge correctly explained that "to establish an Eighth Amendment violation for lack of medical attention, a prisoner must show that he or she has a serious medical condition and that the defendants displayed a deliberate indifference to his or her health." (Report and Recommendation at 4) (citing Estelle v. Gamble, 429 U.S. 97 (1976); Wilson v. Seiter, 501 U.S. 294 (1991)). Thus, to hold Belmont officials liable under an Eighth Amendment claim, Mrs. Garrett must have been in Belmont's custody, she must have had a medical condition the guards were aware of, and those guards must have treated this condition with deliberate indifference.

According to Mr. Garrett's amended factual statement in his objection, at the time of her suicide Mrs. Garrett was no longer a prisoner, or involuntarily held by Belmont. (Memo in Support of Objection at ¶4). One must be in government custody at the time of her injury to claim an Eighth Amendment medical violation. Due to the fact that Mrs. Garrett was no longer in Belmont's custody, and was not being held in any institution at all, the Eighth Amendment does not apply to Mr. Garrett's claim. As stated in the Report and Recommendation, because one must be confined by the government at the time of the injury to claim an Eighth Amendment violation, the court need not address the subjective and objective components of such a violation. Accordingly the Eighth Amendment claim is properly dismissed.

B. Fourteenth Amendment Analysis

The second Constitutional issue raised by the complaint is a possible violation of the Fourteenth Amendment Due Process Clause. The Due Process Clause of the Fourteenth Amendment prevents state governments from depriving "any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV, §1. Again, as stated in the Report and Recommendation, like prisoners, serious medical needs of pretrial detainees may not be treated with deliberate indifference. See Bell v. Wolfish, 441 U.S. 520 (1979). As noted, the "Due Process Clause is written as a limit on the State to prevent it from depriving individuals of life, liberty, or property, however, it does not confer any affirmative duty on the State to protect those interests." (Report and Recommendation at 7) (citing DeShaney v. Winnebago County Dept. of Soc. Svs., 489 U.S. 189, 195 (1989)). Finally, "a State's failure to protect an individual against private violence, simply does not constitute a violation of the Due Process Clause." DeShaney, 489 U.S. at 197. There are, as the Magistrate Judge noted, two exceptions to this general no-duty rule.

1. Special Relationship.

The first exception to the no-duty applies when a special relationship exists between the state and the injured party-i.e. if the party is in state custody-the state has a duty to keep that person from harm. See Janan v. Trammell, 785 F.2d 557, 560 (6th Cir. 1986); Sargi v. Kent City Bd. Of Educ., 70 F.3d 907 (6th Cir. 1995). However, "once a person is no longer in state custody, he is not in a 'special relationship' with the state." Bynum v. City of Magee, Miss., 507 F. Supp. 2d. 627, 633 (S.D. Miss. 2007). Custody terminates "when the state no longer restrains the individual from being able to care for himself". Id. (quoting Townsley v. West Brandywine Township, 2006 WL 1147267, *5 (E.D. Pa. 2006)). Furthermore, suicidal or not, the

state has no duty to continue to hold someone involuntarily. The court in Bynum held that the "Constitution does not impose upon a city a duty to hold a suicidal individual for the sole purpose of proving him with medical care". Bynum, 507 F. Supp.2d at 633. There is simply "no constitutional right. . . to be imprisoned, and none to be involuntarily committed in a mental health facility." Wilson v. Formigoni, 42 F.3d 1060, 1066, (7th Cir. 1997). Once released, the state has no duty to further protect the individual from dangers, known or unknown. DeShaney, 498 U.S. at 202. Furthermore, the agency that detains a citizen "does not become the permanent guarantor of an individual's safety by having once offered him shelter." Id. Thus, authorities, having no other reason to detain someone, have no duty to continue to detain a person even if she is a danger to herself or others. Once that person has been released, the special relationship between the state and the former detainee is terminated and the state no longer has a duty to protect that person from harm.

While DeShaney still governs this case, the facts of Bynum, are closer to those of the case at bar. In Bynum, police officers found Benjamin Bynum lying in the road attempting to commit suicide. The officers put Mr. Bynum into their cruiser and brought him home, where they left him. Id. Two days later police were notified of a second suicide attempt in which Mr. Bynum barricaded himself in his room. Finally, three days after the incident at the house, Mr. Bynum committed suicide by burning his house down. Id. The court held for the sake of argument that Mr. Bynum had been "in custody" while in the cruiser. Therefore, a special relationship existed at that time.

The plaintiffs, Mr. Bynum's family, claimed that because the police had taken him into custody and knew he was suicidal, the police "assumed a duty to hold [Mr. Bynum] in custody for the purpose of providing him with mental health services." Bynum, 507 F. Supp. 2d. at 633. Stated another way, the defendants asserted

that Mr. Bynum had "the right to remain in custody for the purpose of protection and receiving mental health treatment." Id. The family claimed that once Mr. Bynum had been detained, he became a pretrial detainee and was therefore entitled to protection from his own suicidal tendencies. Id. Releasing him and failing to treat his mental health issues, they claimed, was a violation of Mr. Bynum's Fourteenth Amendment right to due process.

The court, however, held that the special relationship had terminated the moment Mr. Bynum was released. Since Mr. Bynum had been released five days earlier and the special relationship had terminated, the police no longer had a duty to protect him at the time he committed suicide. Furthermore, it held that there is no Constitutional right to remain in custody or to be involuntarily committed. Thus, the police had no duty to protect him once they released him from custody, and had no duty to keep him in custody any longer, voluntarily or involuntarily.

Similarly, once Mrs. Garrett was released, her special relationship with Belmont terminated. While Belmont may have had a duty to protect her from harm while she was incarcerated, that duty did not follow her outside of the jail or mental health institution. Belmont had no duty to continue to detain Mrs. Garrett, nor a duty to involuntarily commit her for mental health treatment. Since Belmont owed Mrs. Garrett no further Constitutional duty, Mr. Garrett cannot recover under the special relationship doctrine.

2. State-Created Danger

The second exception to the no-duty rule is a state-created danger theory. Under such a theory, the plaintiff may recover only if the state's affirmative acts created or increased the risk of private acts of violence against a specific person. See Kallstrom v. City of Columbus, 136 F.3d 1055, 1066 (6th Cir. 1998). Thus, as the Report and Recommendation stated, "the state

must have both been aware of the dangers posed to the plaintiff, and played a part in the creation of those dangers." (Report and Recommendation at 8) (citing DeShaney v. Winnebago County, 489 U.S. 189, 201 (1990)). An illustration of this theory is the deaths of 12 students in Breen v. Texas A&M University, 485 F.3d 325 (5th Cir. 2007). The students were preparing for the school's annual bonfire by stacking telephone-pole-size logs on each other when the pile collapsed on the students, killing 12 and injuring 27. Since this was an annual university sanctioned event, the court determined that the state created a danger to the students by failing to provide safety guidelines or trained professionals.

In Bynum, the court determined that since the police found Mr. Bynum at risk for suicide because he was attempting suicide when they found him, and since he was still at risk when they released him, the state did not create or increase the danger of him committing suicide. Indeed, the police prevented Mr. Bynum from succeeding initially by pulling him off of the road where they found him.

Like the police in Bynum, Belmont prevented Mrs. Garrett from committing suicide twice while in custody. Mrs. Garrett was at risk for suicide when she entered Belmont's custody, and when Belmont released her. Belmont did not, therefore, create or increase the risk of Mrs. Garrett committing suicide in any meaningful way. The state-created-danger theory, therefore, does not apply in this case.

### III.

For the reasons stated above, the Court overrules Mr. Garrett's objection and adopts the Magistrate Judge's Report and Recommendation. Accordingly, Mr. Garrett's claim is **DISMISSED** for failure to state a claim upon which relief can be granted. The clerk shall mail a copy of this order, the Report and Recommendation, and the complaints to the defendants.

**IT IS SO ORDERED.**

Date: July 9, 2008                                         <u>S/ James L. Graham          </u>
                                                          James L. Graham
                                                          United States District Judge